IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEPICHIAN ALDRICH,  :<br>    Plaintiff,  :<br>            :<br>    v.       :<br>            :<br>MERRICK B. GARLAND.,  :<br>    Defendant.  : | Civ. No. 24-cv-847 |

**Diamond, J**                                                                                           **January 14, 2025**

## MEMORANDUM

Allepichian Aldrich proceeds against Attorney General Merrick Garland under the Americans with Disabilities Act and Rehabilitation Act of 1973. (Doc. No. 10); 42 U.S.C.A. § 12102 *et seq.*; 29 U.SC. § 701 *et seq.* Because Aldrich has failed to exhaust her administrative remedies respecting almost all her claims, and because she has failed to present evidence supporting her few remaining claims, I will grant the Government's Motion for Summary Judgment.

**I.    BACKGROUND**

I have construed the facts and resolved all factual disputes in Aldrich's favor.

Because Aldrich sues Mr. Garland in his official capacity, the United States is the actual defendant here. See Lewal v. Ali, 289 Fed. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States.").

Aldrich, a Certified Fraud Examiner, began working as a Forensic Accountant for the Federal Bureau of Investigation's Philadelphia Office on February 27, 2022. (Doc. No. 10 at 3.) Aldrich was hired at General Schedule Level 12, Step 1, which the Bureau's Human Resources Department told her provided the highest starting Forensic Accountant salary for external

1

candidates. (Doc. No. 16 at 5.)

Five years earlier, Aldrich had become a paraplegic. She requires continual use of a wheelchair. (Id.) The FBI was aware of Aldrich's disability before it hired her. (Id.)

The FBI housed Aldrich in an on-site dorm room during her five weeks of training in Quantico, Virginia. (Id. at 7-8.) The Bureau housed the others in Aldrich's training class at a nearby hotel, which could not accommodate Aldrich's disability. (Id. at 8.) Aldrich nonetheless had accessibility difficulties while at Quantico. (Id.)

When Aldrich began working in the Philadelphia Office, accessibility remained difficult. The building had narrow doorways as well as high copy machines and badge scanners. Whenever a colleague held a door for her, Aldrich's face might pass close to the individual's crotch because the doorways are narrow. She sometimes had difficulty gaining access to an accessible restroom even though there were two on her floor. On one occasion, when both bathrooms were occupied, Aldrich went to another building in search of an unoccupied restroom and soiled her clothes before finding one. (Doc. No. 10 at 14.) Aldrich also disfavored coworkers insisting on helping her with everyday tasks.

On July 11, 2022, Aldrich met with her supervisors, including Special Agent in Charge Jacqueline Maguire, to discuss these problems. Maguire promptly contacted the Philadelphia Office's architect and others to schedule a site visit and address Aldrich's concerns. Maguire also asked Aldrich to attend a July 26, 2022 disability training session and report on how that training could be improved. Aldrich attended virtually. She found demeaning both the training and a co-worker's comment—"They should put you down at the training site so the agents could learn how to frisk and search a wheelchair." (Doc. No. 10 at 15.) A short time later, Aldrich attempted to take her own life and was hospitalized. On July 29, 2022, Aldrich resigned from the FBI. The

Bureau took eight days to process and transmit her "COBRA" health insurance application, which was approved.

Believing she was the victim of discrimination, Aldrich contacted an Equal Employment Opportunity Commission Counselor on September 7, 2022; she filed a Complaint with that Office on October 19, 2022.  On February 27, 2024, having not yet received a decision from the EEOC, Aldrich filed a Complaint in this Court.  (Doc. No. 1.)

On May 31, 2024, Aldrich filed an Amended Complaint.  (Doc. No. 10.)  The Government moved to dismiss or, in the alternative, for summary judgment.  (Doc. No. 11.  To support its Motion, the Government submitted affidavits from: 1) SAC Maguire, describing her meeting with Aldrich and the corrective actions Maguire took; and 2) the Chief of Human Resources in the FBI's Philadelphia Office, explaining that the Bureau promptly processed Aldrich's COBRA request.  (Doc. Nos. 11-2, 11-3.)  I informed the Parties that I would treat Government's Motion as one for summary judgment.  (See Doc. No. 14 (advising the Parties to submit any additional material pursuant to Fed. R. Civ. P. 12(d)).  In response, the Parties conducted no discovery.  Rather, the Government submitted an affidavit from a Human Resources Officer, averring that Aldrich was hired at the highest GS level for which she was qualified.  (Doc. No. 16.)  In opposing summary judgment, Aldrich submitted only her sworn EEOC declaration, which has apparently been copied into the Amended Complaint to comprise her factual allegations.  (Doc. No. 15.)  Submitting no new legal memorandum, Aldrich continued to rely on her Rule 12(b)(6) memorandum, in which she addressed almost none of the Government's arguments.

## II.   CAUSES OF ACTION

Although Aldrich is represented by counsel, her Amended Complaint is not a model of clarity.  After 140 paragraphs of factual allegations (often verbatim repetitions of those

3

in her EEOC declaration), the pleading sets out in eight paragraphs a single count of "Disability Discrimination, Failure to Accommodate, Harassment, and Retaliation," purportedly brought under both the American with Disabilities Act and the Rehabilitation Act of 1973.  42 U.S.C.A. § 12102 *et seq.*; 29 U.S.C. § 701 *et seq*.  Although Aldrich thus mentions the ADA, she apparently bases her claims exclusively on the Rehabilitation Act.  Moreover, as federal buildings, the Bureau's Quantico facility and the Philadelphia Office must comply with the Architectural Barriers Act of 1968, *not* the ADA.  42 U.S.C. § 4152.  In any event, Aldrich nowhere indicates which factual allegations support which claims.  To add to this jumble, in the eight paragraphs, she appears to add claims for hostile work environment and constructive termination.  (Doc. No. 10 ¶¶ 143, 146-148).  Aldrich alleges that all the Government's wrongful conduct was motivated by disability discrimination.

### III.     STANDARDS

Upon motion of any party, summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  I "must view the facts in the light most favorable to the non-moving party," and take every reasonable inference in that party's favor.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party must initially show the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  An issue is material only if it could affect the result of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The opposing party must then support each essential element with concrete evidence in the record.  See Celotex, 477 U.S. at 322-23; Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment); Hugh,

418 F.3d at 267 ("[T]he non-moving party cannot solely rest upon her allegations.").

## IV. DISCUSSION

The United States argues that: 1) Aldrich failed to exhaust almost all her claims, which are now time-barred; and 2) there is no evidence to support her remaining claims of hostile work environment, constructive discharge, and retaliation. I agree.

### A. Administrative Exhaustion

Aldrich resigned from the FBI on July 29, 2022. She first contacted an EEOC Counselor on September 7, 2022 and filed her EEOC Complaint in October 2022. (Doc. No. 11 at 3.) To excuse the delay in contacting the Counselor, Aldrich alleges that her "Rehabilitation Act Claims do not require exhaustion of administrative remedies." (Id.) This is simply incorrect.

Insofar as she bases any claim on the ADA, that statute requires public employees like Aldrich to exhaust their administrative remedies. See Scott v. Wilkie, No. 19-5136, at *2 (E.D. Pa. May 9, 2023) (citing Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997)).

Although the Amended Complaint does not identify the specific Rehabilitation Act provisions under which Aldrich proceeds, § 504 of the Act governs disability discrimination. See 29 U.S.C. § 794(a). To support her belated contention that § 504 did not require her to exhaust her administrative remedies, Aldrich relies on an inapposite fragment plucked from Freed v. Consolidated Rail Corp. (Doc. No. 11 at 17.); 201 F.3d 188 (3d Cir. 2000.) The Freed Court addressed only the "narrow issue [of] whether a plaintiff suing solely under section 504 must exhaust the Title VI administrative process before bringing suit *against a private recipient of federal funds*." Freed, 201 F.3d at 192 (emphasis added). In ruling that such a plaintiff need not exhaust, the Court re-affirmed the Circuit's earlier holding in Spence v. Straw: "[F]ederal employees must exhaust Title VII administrative remedies before filing suit against a federal

employer under section 504." Id. (citing Spence v. Straw, 54 F.3d 196, 201 (3d Cir. 1995).

Accordingly, Aldrich was required to exhaust her administrative remedies under both the ADA and the Rehabilitation Act. She thus had 45 days from any wrongful conduct to contact an EEOC Counselor. See 29 C.F.R. § 1614.105(a)(1); Wilson v. United States Postal Serv., 814 Fed. App'x 719, 721 (3d Cir. 2020) ("'[E]xhaustion requires . . . consultation with an agency counselor' within those forty-five days." (citing Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3d Cir. 1997)). Aldrich does not argue that she is entitled to equitable tolling, nor does she offer evidence or even allege facts that might so entitle her. See Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007). Nor does she allege any "extraordinary circumstance" that prevented her from timely contacting the EEOC. Young v. Temple Univ. Hosp., Civ. Nos. 19-1174 & 19-1714, 2019 WL 5569510, at *7 (E.D. Pa. Oct.28, 2019).

Because Aldrich first contacted the EEOC on September 7, 2022, all her claims based on wrongful conduct occurring before July 24, 2022 (five days before her July 29, 2022 resignation) are unexhausted and time-barred.

Once again, Aldrich initially urged (incorrectly) that she was not required to exhaust her claims. (Doc. No. 10 at ¶ 17.) After the Government moved to dismiss on exhaustion grounds, however, Aldrich changed course, arguing that her hostile work environment, constructive discharge, and retaliation claims survive as continuing violations. (Doc. No. 12 at 7.) I do not agree.

Under the continuing violation doctrine, "when at least one component act of a hostile work environment occurred within the limitations period, courts may consider earlier component acts that are 'part of the same unlawful employment practice.'" Mudie v. Phila. Coll. of Osteopathic Med., No. 22-2132, 2023 WL 6210754, at *3 (3d Cir. Sept. 25, 2023) (quoting Doe v. Mercy Cath.

6

Med. Ctr., 850 F.3d 545, 566 (3d Cir. 2017)). "To be part of the same unlawful employment practice, component acts must involve 'similar conduct by the same individuals, suggesting a persistent, ongoing pattern.'" Mudie, 2023 WL 6210754, at *3 (quoting Doe, 850 F.3d at 566).

Aldrich offers only the "bathroom and other accessibility" problems that allegedly occurred in June and July of 2022 as evidence of a continuing violation. (Doc. No. 12 at 7.) This is not sufficient. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). "The focus of the continuing violations doctrine is on affirmative acts of the defendants." Weis–Buy Serv., Inc. v. Paglia, 411 F.3d 415, 422-23 (3d Cir. 2005) (quoting Cowell, 263 F.3d at 293). "A defendant's failure to mitigate a prior violation does not qualify as an 'act' that extends the violation." Gould v. Council of Bristol Borough, No. 13-cv-4016, 2014 WL 296944, at *5 (E.D. Pa. Jan. 27, 2014), aff'd sub nom. Gould v. Borough, 615 F. App'x 112 (3d Cir. 2015).

Once again, the Bureau's Philadelphia Field Office must comply with the Architectural Barriers Act of 1968 (*not* the ADA). 42 U.S.C. §§ 4151-4157. The ABA requires that "physically handicapped persons will have ready access to, and use of, such buildings." 42 U.S.C. § 4152. Yet, Aldrich nowhere alleges that the office violated the ABA; indeed, she never mentions the ABA. Rather, Aldrich contends that the FBI should have "simply taken action" to ensure that ambulatory individuals were not using the wheelchair-accessible restrooms. She points to no affirmative acts by the FBI that violated any law. Accordingly, Aldrich has not made out a violation of the law, much less a continuing one.

Aldrich began working at the FBI's Philadelphia Field Office on February 27, 2022 and immediately became aware of the restroom problem, but did not contact an EEOC counselor until over six months later. The "continuing violations doctrine is not a substitute for a plaintiff's

7

'awareness of and duty to assert his/her rights' in a timely fashion." Bennett v. Susquehanna Cnty. Child & Youth Servs., 592 F. App'x 81, 85 (3d Cir. 2014) (quoting Cowell, 263 F.3d at 295).

Because Aldrich did not contact an EEOC counselor about her accessibility problems (or her belief that the problems were caused by the Government's intentional discrimination) until over six months after she became aware of them, there was no continuing violation. Accordingly, I am compelled to dismiss all her discrimination and related claims based on events occurring before July 24, 2022 because they are unexhausted and now time-barred.

### B. Remaining Claims

Aldrich's only claims based on conduct that occurred within the 45-day limitations period are that: 1) a colleague made an offensive comment (which I described earlier) on July 26, 2022; 2) her July 29, 2022 resignation was a constructive discharge; and 3) the FBI purportedly delayed sending her the COBRA paperwork after her resignation.

#### 1. Hostile Work Environment

The comment a colleague made to Aldrich on July 26, 2022 does not make out a hostile work environment.

Courts in this Circuit have recognized a plaintiff may bring a hostile work environment claim under the Rehabilitation Act. See Boandl v. Geithner, 752 F. Supp 2d 540, 571 (E.D. Pa. 2010) (collecting cases). To make out such action based on a co-worker's conduct, the plaintiff must demonstrate:

> (1) She suffered intentional harassment based on her race or sex;
> (2) The harassment was severe or pervasive;
> (3) The harassment detrimentally affected h[er];
> (4) The harassment would have detrimentally affected a reasonable person in similar circumstances; and
> (5) A basis for employer liability.

Hanafy v. Hill Int'l, Inc., No. CV 22-878, 2023 WL 3010176, at *13 (E.D. Pa. Apr. 19, 2023).

8

The plaintiff must show that her workplace was so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). I look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Whitesell v. Dobson Commc'n., 353 F. App'x 715, 717 (3d Cir. 2009).

Once again, when they met on July 11, 2022, Maguire asked Aldrich to attend an upcoming disability training session to "provide feedback regarding ways the division could improve." (Doc. No. 10 at 14.) As I have described, on July 26, 2022, just after the session, which included a depiction of the areas in a wheelchair where items could be hidden—a squad member told Aldrich "[t]hey should put you down at the training site so that agents could learn how to frisk and search a wheelchair." (Id. at 15.)

This comment, although unfortunate, does not make out a hostile work environment. See Carver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) ("'[O]ffhanded comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988)). Moreover, the comment was not part of a continuing violation. For the doctrine to apply, "the same individuals must be involved in the same harassment over a period of time." Hilton v. Home Depot, Inc., No. 20-5145, 2022 WL 837207, at *4 (E.D. Pa. Mar. 21, 2022) (citing Doe v. Mercy Case Catholic Med. Ctr., 850 F.3d 545, 566 (3d Cir. 2017)). Aldrich does not allege—and certainly has not shown—that the individual who made the July 26th remark made the earlier discriminatory comments.

9

In sum, Aldrich has not made out a hostile work environment.

2. Constructive Discharge

Aldrich contends that her July 29, 2022 resignation from the FBI amounts to constructive discharge.

I must apply an objective test: whether a reasonable jury could conclude that an "employer knowingly permit[ted] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 (3d Cir. 2006) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 887 (3d Cir.1984)). The conditions must have been "intolerable." Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173 (3d Cir. 1988). I must consider whether the employer:

> (1) Threatened [the employee] with discharge or urge[d] or suggest[ed] that she resign or retire;
> (2) Demoted her;
> (3) Reduced her pay or benefits;
> (4) Involuntarily transferred [her] to a less desirable position;
> (5) Altered her job responsibilities; or
> (6) Gave unsatisfactory job evaluations.

Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010).

Aldrich contends that she was constructively discharged "because the aforesaid bathroom conditions and other issues she experienced at the FBI were so unpleasant and/or difficult that a reasonable person would have felt compelled to resign." (Doc. No. 10 at 17.) Once again, Aldrich does not dispute that the FBI building was ABA-complaint, or that the floor where Aldrich worked had two wheelchair-accessible restrooms. Aldrich has not alleged that her disability prevented her from waiting for an accessible restroom to become available. That she chose not to wait and instead sought another restroom was not intolerable. See Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir.1992) ("[T]he law does not permit an employee's subjective perceptions to

10

govern a claim of constructive discharge." (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985)).

Moreover, it does not appear that the FBI "knowingly permitted" any intolerable conditions.  It is undisputed that after the July 11, 2022 meeting with Aldrich, Maguire took remedial action, including scheduling an appointment between "the building architect, an ADA consultant, and a hardware specialist to conduct a site visit to the [Philadelphia Field Office] to address [Aldrich's concerns]."  Aldrich belatedly acknowledges that she was unaware of Maguire's efforts "because [she] submitted [her] resignation a short time later."  (Doc. No. 15 at 28.)  A reasonable employee would have determined the status of these efforts before resigning. See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3rd Cir. 1993) ("[A] reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option.").

In these circumstances, Aldrich's constructive discharge claim fails.

3. Healthcare Coverage—Retaliation

Aldrich apparently contends that the FBI's purported delay in transmitting the paperwork required for her to obtain "COBRA" coverage after her resignation "was a continuance of its hostile work environment, harassment, retaliation, and discrimination against plaintiff."  I will construe this catchall as a retaliation claim because it occurred after Aldrich's employment with the FBI ended.

A prima facie Rehabilitation Act claim of retaliation has three elements: (1) the plaintiff engaged in protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) a causal connection exists between the adverse action and the protected activity. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231–32 (3d Cir. 2007).

11

Aldrich offers no evidence of any causal connection between any purported delay in confirming her health insurance coverage and any protected activity she undertook. It is undisputed that once she resigned, she automatically received 31 days of free coverage. (Doc. No. 10 at 15; Doc. No. 11 at 6.) Moreover, it is also undisputed that even though Aldrich took over a month after her July 29, 2022 resignation to send the FBI her COBRA election materials, the FBI processed her forms and sent them to the National Finance Center—a separate federal agency that processed her application—in eight days. (See Doc. No. 11-4 at 6.) Aldrich acknowledges that she then received the COBRA coverage. (Doc. No. 10 at 16.) The Bureau thus took no materially adverse action against her.

Plainly, Aldrich has not made out retaliation.

## V.     CONCLUSION

No matter how favorably construed, the record confirms that the difficulties Allepichian Aldrich encountered during her six months at the FBI were not the result of discrimination or any wrongful conduct. Accordingly, I am compelled to grant the Government's Motion for Summary Judgment.

An appropriate Order follows.

**AND IT IS SO ORDERED.**

/s/ Paul S. Diamond
Paul S. Diamond, J.